The next case, number 23-1683, Scott Rosenthal v. Bloomingdales.com, LLC At this time, would the counsel for the appellant introduce himself on the record to begin? Jameson Etzel for the appellant, Scott Rosenthal, and may I reserve three minutes for rebuttal? You may. You may proceed. So the district court dismissed this case under the relatedness prong of the specific jurisdiction test. That's a big, big error, and it has multiple layers. This case is only about wiretapping that Bloomingdales conducted within Massachusetts. So when we're looking at the relatedness prong, the question we're asking is, what is the connection to Massachusetts? Well, the entire case is about the defendant's contacts with Massachusetts. The district court, however, said this case had no, Bloomingdales had no Massachusetts-related conduct because the plaintiff, the appellant, Scott Rosenthal, initiated the contact. So your argument is, well, let me break it up. Yep. Plaintiff initiating the contact, would you agree or disagree that that gives this jurisdiction in Massachusetts?  In this instance, it does create a contact with Massachusetts because in the relatedness prong, we're not looking at who started the interaction between the parties. And a good example of this is the Ford Motor case, the Supreme Court's decision from 2021, where almost all the case is about the relatedness issue. Does the claim arise out of or relate to the defendant's contacts with the forum? Notably, in Ford Motor, there was no direct connection at all between the plaintiff and the defendant. The plaintiffs bought automobiles outside of the forum states, and then they had accidents within the forum state. But because Ford Motor's contacts with those forum states were so extensive, including the sale of similar vehicles in the forum state, that was enough of a connection for the Supreme Court. Here, we actually have a more direct arising out of claim, because the claim is only about the code that the defendant sent to the plaintiff's browser. So what you're saying is, even though the plaintiff made the first direct contact, he's in turn getting wiretapped in Massachusetts. Exactly. And this isn't a passive website type of case. We're talking about active code. There's been a lot of cases... Can I ask you a preliminary question, though? And this really goes to purposeful availment, not to relatedness. You say the code that was sent to the plaintiff's browser in Massachusetts. Where are the allegations in the complaint that say that anything was done in Massachusetts? Yes, so when we're looking at exactly the technology that operates here, this is code which we contend is the wiretapping device. The way it functions is it is sent by the defendant's servers to a browser, and from there... I understand how it functions, but there's nothing in the complaint that ever says, that says, as I read the complaint, that that was ever done, that it was ever sent to Massachusetts. Oh, I disagree, Your Honor. Or for that matter, that the plaintiff, a Massachusetts resident, ever received or accessed the code while in Massachusetts. If I could point you to the appendix, it's the complaint, it's page 21, paragraph 47, I believe is where we discuss that the plaintiff was in Massachusetts using his device in Massachusetts when he accessed Bloomingdales.com. So we're very clearly technically alleging that this happened in Massachusetts. And notably, the district court's decision doesn't get into any of this. It doesn't talk about how the technology works. It doesn't talk about where the interception is occurring. It simply concludes, because the defendant... So you're saying that because he signed on in mass, based on the allegation that you made, that that in and of itself is sufficient, or a sufficient inference? No. That the code would have gone to him? No, no. We allege that the code was sent to his device where it did its operations on his device. Because what the code's doing is... So you're just trying to figure out where it says that in the complaint. When the plaintiff alleges that he was using his device in Massachusetts when he accessed the website. We have more detailed allegations about technically how the code works, and how it is sent to the browser. And it is on the user's browser, which is where it begins intercepting a communication. We also have that description in the complaint. One example would be page 16 of the Joint Appendix, paragraph 25 of the complaint. It talks about how the code is operating on the user's browser once it is sent there. And that's critical, because we're looking at where is the point of interception. And in the defendant's argument, the appellee's argument, they talk a lot about how, well, we're not complaining about anything that happened in Massachusetts. We're only complaining about the use of the code on Bloomingdale's website. And Bloomingdale's is in Ohio and New York and not here. But that's not correct. That's not the claim. The claim is not about putting the code on their website. The claim is about the code being sent to the browser, where it then begins intercepting the user's keystrokes, mouse movements. Those things are all happening in Massachusetts. And the interception can only... Where in the complaint is the allegation that that, in fact, happened with respect to Mr. Rosenfall in Massachusetts? By virtue of the fact that he was in Massachusetts while he was using his device, coupled with our allegations about how the technology works, the only inference you can draw is that it's all happening on his browser in Massachusetts. Okay, so this is inferential. There is no allegation to that effect. It's an inference to be drawn from two other sets of allegations. Yes, but it's an inescapable inference, because technologically, how it has to happen. But why is it inescapable? Because Mr. Rosenfall may take his browser with him on vacation to Miami or Bangor or anywhere else. He doesn't have to be in Massachusetts. But we allege that he was in Massachusetts. At the time he accessed the website? Yes, paragraph 47 of the complaint. And they don't dispute any of that. They're trying to conceptually change the focus to putting the code on the website and not where the interception is happening. And it has to happen on his device, because what we're talking about is the interception of his inputs, his keystrokes, his mouse movements. That's happening where he is. And for purposes of this complaint, we allege he was in Massachusetts. Putting the code on the website, there's no claim there. It's the interception. And when I'm communicating, it's like I'm talking on my phone in Massachusetts. If the device is intercepting the signal from my phone in Massachusetts, that's a clear Massachusetts connection. And that is a very good analogy to what is happening here. The only difference is instead of a physical device, they're using code to do the interception. And there's nothing particularly novel about that, because for personal jurisdiction purposes, we've had contacts assessed that include electronic communications going back as long as there have been electronic communications. In the Plexer case, which was one of this court's cases that even predated Ford, they go into a lot of the fine details about what it means to be accessing a forum and interacting with a forum using a website. And again, I want to reiterate that this is not about a static website. He's not just complaining about content that's on a website. He's complaining about code that was sent to change the behavior of his browser where he was through a two-way open channel of communication. So the connection here, the relatedness prong, can only be in Massachusetts, because we're only talking about his interactions in Massachusetts and other class members who are all, we also limited the scope of the class to only people who were in Massachusetts while they accessed this website. So on the relatedness prong, again, the district court, by focusing just on who initiated the contact, that's a very superficial analysis. It doesn't comport with the law under Ford Motor that's assessing overall, where is this claim centered? Where is this claim about? Where did the events occur? All of the relevant claim-causing events in this case happened in Massachusetts and nowhere else, nowhere else. So most of the cases where people are losing on specific jurisdiction, they're trying to drag a defendant into a forum about things that happened elsewhere. And they're just using the mere availability of the website as their jurisdictional hook. That's not what we're doing here. We're complaining about what the defendant did over the internet, but directed into Massachusetts specifically. And that's it. That's what the whole case is about. Give me an illustration of that language in the complaint that says that. Again, I think I need to focus very specifically on, for instance, paragraph 25, where we say, the code that their website is sending, it inserts itself into the event handling routine of the web browser that is being used to receive inputs from users. So if I'm typing on my keyboard, it's- But that doesn't tie into Massachusetts, because that web browser can be anywhere. It doesn't really matter, because this plaintiff was in Massachusetts when he was on his web browser. But this plaintiff was in Massachusetts when? At the time he accessed the code? Where does it say that in the complaint? I believe that's paragraph 47. I can pull it up specifically. Maybe it's not 47, but we- Yeah, oh, it's 45. Excuse me. While in Massachusetts, plaintiff visited bloomingdales.com on his computer or cell phone. So while in Massachusetts. That's the allegation. That's the factual record before the court. And they're not disputing that. So again, the issue, the error the district court made was focusing just on who initiated the contact in the very first instance. But that's also not the claim-related contact. Plaintiff just seeing what is on the website is not the claim-related contact. The claim-related contact is the sending of the code to his browser, which again, was in Massachusetts. And if there's no other questions, I'm- Let me ask you one other question. This case was dismissed without prejudice. So even if we were to affirm on appeal, there's no impediment that you refiled the case with broader allegations, correct? The issue and the reason we wanted to stay on the complaint here is because this conceptual error is so big. This idea that the first person to initiate the contact, from that point on, we're not going to look at what happens in the state, that's a very big error. It would be like, this is maybe a silly analogy, but it'd be like if I walked into a deli across the street from the courthouse here. As soon as I walk into the deli, the storekeeper throws a shoe at my head. And then when I sue him for assault, inevitably, he says, well, you initiated the contact. You walked into my store. Well, the claim-related events still happen in Massachusetts. That's the kind of error the district court made here. And that's why we stood on these allegations to come here. But if we were to affirm, it's not the end of your case, you could still refile in state or federal court here. You would have to come up with other allegations. Well, no. See, my concern is with this type of conceptual error, I'm not sure what more we could allege to bring the case to Massachusetts. He was here. The code was sent here. His communication was wiretapped here. So if you can't file here, then you would have to look under the law of the other state where other normal contacts are. The only option left for us would be to sue the defendant in its home state. And that doesn't really make a whole lot of sense because we'd be suing them in Ohio or New York over communication interceptions that happened in Massachusetts. This is the most natural state for these claims. And if you read Fort Motor, this is exactly the kind of analysis they do. Where is this case really emerging from? Here it's in Massachusetts. I guess the district court didn't think that what was happening in Massachusetts was that significant, rather that the embedding of the data outside of Mass was the pivotal point. But yes, and I did allude to this earlier, but putting the code on their website, that's not a claim because there's no interception. The code isn't per se legal. It's not contraband. This code can be used legitimately to track some of this stuff with users' consent. So if they put it on the website and they say, hey, we're using this thing, it's going to log every keystroke you make while you're on the site, every mouse movement you make while you're on the site, if they make that disclosure, there's no claim here. So just putting it on the website in their home state, there's no claim. The claim arises out of Massachusetts because it was here that they intercepted our plaintiff's communication from his device without his consent. That's why this has to be connected only to Massachusetts. So this is analogous. If I'm making a phone call, let's say, to Bloomingdale's, and normally when we all make these phone calls, different places, health insurance, do you mind if we consent your call? That's the equivalent here. Exactly. So they say, we can record this electronically. I'm not an expert. But that's what they had to do. Exactly. And then there'd be no claim. But either way, putting it on their website alone, not a claim. So what they did in their home state, not as important as what they did here. Thank you. And you have three minutes for rebuttal. Let's hear from Apelli. Thank you, counsel. Please introduce yourself on the marker to begin. Good morning, your honors. May it please the court. Mark Mosier on behalf of Bloomingdale's. I'll start with one of the questions you had, Judge Helpe, towards the end of why there wasn't an amendment to the complaint, and why there was the opportunity to amend the complaint. And I think there's maybe some attempt here to establish personal jurisdiction based on a complaint that alleges only one fact, and one fact alone that ties this case to Massachusetts. And that's that the plaintiff alleged that he accessed Bloomingdale's website while in Massachusetts. If the court were to hold that that was enough to establish personal jurisdiction, Bloomingdale's would be subject to personal jurisdiction in all 50 states. Well, that's not what he's arguing to us. It's not just that he accessed it. It's when he accessed it, this code was sent to his browser, which then extracted his keystrokes. But the allegation in the complaint, and the one he keeps pointing to, is that he accessed the website while in Massachusetts. And what the complaint alleges is that the code is embedded in the website. What they're challenging, the session replay code, is just computer code. It's part of the same code. It's JavaScript. Just like any other part of the website, it's embedded in the website. It sets on a computer service until somebody opens their phone or their browser, types in Bloomingdale's.com, and the website is delivered into the forum onto their browser. So the code itself is not in any meaningful way different than the rest of the website. And this court has repeatedly held that accessing a website without something more is not enough to establish personal jurisdiction. My friend said that it ultimately didn't matter whether the plaintiff initiated the contact with Bloomingdale's or whether the Bloomingdale's initiated contact with a forum. But there's very few principles that are more well-established under personal jurisdiction law that that does make a difference. And it is the defendant's contact. But you mentioned here something more. Isn't counsel arguing there's that something more? And it's the recording without the consent. Our position is that something more can't be part of the website itself. If you look at a case like Motus, excuse me, yes, the case like Motus, there the claim was when I accessed the website, the website returned to me a page that included a phrase, commercial reimbursement services, that was a registered trademark. So language on the phrase constituted a trademark violation. No one suggested that that was something more, that a phrase on the website was enough to take this out of the usual rule that visiting a website is not enough to establish personal jurisdiction. The court's requirement of something more. Well, visiting a website is a lot more complicated as the days go by, isn't it? And here they're saying it's not just visiting the website, but it's visiting the website. And when you do that, then the software is deployed, which starts accessing personal information, namely what you're looking for, your keystrokes. Well, there's no allegation. They're saying that that's beyond just mere accessing. But that is, with respect, what they're alleging is that code is embedded in the website. That is part of the website. And they don't allege anything beyond accessing the website. But you're saying any kind of code embedded in the website is OK? When you say that, I think of all kinds of codes that can be embedded in a website. We're not saying it's OK in any sense of whether or not there could be potential exposure for liability. We're saying it does not establish the something more necessary to establish personal jurisdiction. This court has been clear that the something more needs to be an action directed at the forum states. There's no allegation that the session replay code is only delivered to Massachusetts residents. This is a case where the only tie to Massachusetts is because that's the location where the plaintiff alleges he visits the website. But isn't the code literally placed in the stream of commerce? So if he had been in Rhode Island, it would have done the same thing in Rhode Island. It would have done it in Massachusetts. It could have done it in Puerto Rico. It could have done it in Guam. Absolutely.  Doesn't, when you place something like that in the stream of commerce, doesn't it, then you have the context with the forum. No, the stream of commerce alone is not enough. That's what the case law makes clear. That's what Asahi said. That's what the cases like Modis and Chin applying that in the internet context say. You need something more. The something more needs to be something directed at the forum. The court has relied and has sided to the Ninth Circuit's decision in Mavericks. That's a case where the Ninth Circuit, which also applies to something more, sort of an Asahi framework, found that the website had focused on California, a particular, a single forum. Because there, it was a celebrity gossip website. And so the information related uniquely and specifically to California. There's no allegations at all. I keep going back to this point, but I think it's important. And Judge Sellea was talking about the lack of allegations in the complaint. There is nothing in this complaint that has anything different about Massachusetts than any other state in the country, other than that happened to be the plaintiff's location when he decided to visit the website. Any other resident, if the plaintiff's position were accepted, that visited the website from any other state in the country, they would be able to establish personal jurisdiction under the same standard. And the court's reasoning and why it has applied kind of a stream of commerce Asahi framework to claims involving accessing websites is because they are not going to hold that simply by publishing a website to the general public, putting it on a server, that a defendant has purposely availed itself of every jurisdiction in the country. They instead look for some allegation that ties the defendant's conduct. It's not, with all respect, my colleague, it can't be the plaintiff's conduct. It's got to be the defendant's conduct. And that's why I look at other factors and other sorts of allegations to say, is there something the defendant did that is directed and focused specifically on this forum as opposed to every other forum? They're not aware of any case that has recognized a theory that has allowed personal jurisdiction on simply an allegation that I accessed the website from the forum that would give rise to personal jurisdiction in every state. We cited multiple times in our brief the Ninth Circuit's decision in Briskin. There was no response to it in the reply, and we haven't heard anything about it today. But it is the case from any court of appeals that's most similar on the facts. And I don't see how the court could rule for the plaintiffs without creating a circuit split with Briskin. Their Shopify provides a back end e-commerce platform for websites. When you go onto a website using Shopify, Shopify collects your personal information. What the plaintiffs alleged there, they attempted to establish personal jurisdiction because the plaintiff there actually alleged, I made a purchase on the website. The allegations here, there's no allegation that the plaintiff did anything while on the website. He's never alleged that he's purchased anything from Bloomingdale's. He doesn't even allege that he visited different pages. But back to Shopify, there was an allegation that the plaintiff purchased goods from the website. Shopify captured personal information, and so they brought privacy-related claims in California. The Ninth Circuit held that there was no personal jurisdiction because they didn't establish something more. The same claim could have arisen in any state in the country because there was nothing targeted to California other than the fact that the plaintiff alleges that he made a purchase from the website while in California. You know, you saw some in the brief, some mention of brick-and-mortar stores, and there's a mention of advertising. There's no allegation at all in the complaint about advertising, and so I think maybe that's why we haven't heard about it today. The only reference to a brick-and-mortar store is one passing reference in the complaint, but it doesn't even allege the existence of a brick-and-mortar store in Massachusetts. There's no allegation attempting to tie anything that the plaintiff did or his claims to a brick-and-mortar store. So ultimately, I think what it comes down to is this court has repeatedly said visiting a website is not enough, and here the only allegation tying this complaint to Massachusetts is that the plaintiff alleges that he visited a website from the forum. You know, the discussion that the district court had about what's, you know, I don't even think it's which part of the claim is more important, the procuring and embedding the session replay code on the website versus the visiting the website, I don't think it's really about what's more important. I think the relevance for personal jurisdiction purposes is the procuring and embedding the session replay code is something the defendant intentionally did. So if that happened in Massachusetts, if that was directed towards Massachusetts, that would be significant for personal jurisdiction purposes. After it's embedded in the website, the fact that it goes from the server outside of Massachusetts onto a browser in Massachusetts is solely in response to a request from a plaintiff accessing the website. And so why that step of the claim is not giving significance for the personal jurisdiction analysis is because it's done, it's initiated by the plaintiff. It's not, it doesn't show the defendant's purposeful ability. Let me ask, what would be then the state where this lawsuit would have to be filed? There's no question that the suit could be filed in New York or Ohio. And we certainly aren't even asking for a ruling or the court would not be required to say that there could never be a set of allegations that would give rise to specific jurisdiction. All you have before you is a complaint that alleges one contact with the forum and one contact only, the fact that the plaintiff made the decision to access a website from the forum. And all we're asking for is the court to hold just as it did in Motus, just as it did in Chin, that if you're only tied to the forum state as an allegation that that's where you were located when you accessed the website, that's not good enough to establish specific jurisdiction. Should there have been any jurisdictional discovery? We don't think that was necessary. It was not requested. They even had an opportunity for leave to amend. They did not request it. They did not request it. They requested leave to amend, it was granted. Okay, but like for example, they could have asked, Judge Kasper, we'd like some jurisdictional discovery. We'd like to explore in a series of interrogatories or a deposition, the purposeful availment of the forum as to how these recordings, maybe this was a single instance or maybe there were hundreds or thousands. That did not take place. It did not take place. I mean, the court's case law makes clear you can do kind of a prima facie analysis and you kind of look just at the allegations. At that step, and that's how it was decided here, you wouldn't necessarily need jurisdictional discovery. Paul, but if there's cases where, and again, as a former district judge, there were cases where it was requested and it was granted for a very limited purpose. That did not happen here. Yeah, it wasn't requested. And the only point I was gonna make is that ultimately at the end of the day, the plaintiff has the burden to prove through evidence, by preponderance of the evidence, the existence of personal jurisdiction. And so you typically see discovery needed or given once you get to the point where the plaintiff's going to be forced to carry the burden. It's not the case, I wouldn't say on this complaint, when you allege no tie to the forum, other than that's where I visited the website, that a plaintiff should be allowed jurisdictional discovery to go on. Some courts have rejected it and saying that would be a fishing expedition, right? It's one thing to give them discovery to help prove the well-pleaded allegations of the complaint. It's another thing just to allow them discovery on things they don't plead. But back to, I think, probably the more important point, the plaintiff was not asked for here, and so there would be no basis to give it to them here. And let me just ask, following up on that, there was an amendment requested, which was denied. Wouldn't that have led, perhaps, to jurisdictional discovery? Actually, the motion, they were given leave to amend. They decided they didn't want it. They moved and asked for entry of final judgment without taking advantage of the opportunity. So the district judge- So even in the amendment, they could have tried that, explored that alternative, which was not explored. Right, they could have tried to develop more specific facts. I mean, that's why I think we're here, and why this would be such a sea change in the personal jurisdiction law, to hold that one allegation that I visited the website while in the forum, if that's enough to establish personal jurisdiction, there's personal jurisdiction in every state. And would you agree, just as a matter of principle, if this case being dismissed without prejudice, if they can refile another case here in Massachusetts, obviously they would have to, as counsel said, well, counsel said, I don't think we could allege anything else, but if they were allege enough facts, in theory, there could be a case, at least in Massachusetts, where there's jurisdiction, that it would go through the whole process. But that did not occur here. I mean, there was a dismissal, obviously a dismissal without prejudice doesn't mean the claims are gone forever. I mean, it gets into, I think, a tricky area of law, the claim and issue preclusion effect of a ruling on a dismissal for lack of personal jurisdiction. So I wouldn't concede that this ruling, a ruling saying that they failed to plead, personal jurisdiction could not or would not have any preclusive effect. But certainly their claims were dismissed without prejudice. And as we've said, there are- And again, in New York or Ohio, I think you said Ohio, there's no prejudice whatsoever. They can refile and ask whatever they want. Yeah, there would not be any challenge for personal jurisdiction in those locations, those locations where Bloomingdale is located. Wouldn't be, perhaps if it's filed in New York or Ohio, Ohio or New York courts might have to look to Massachusetts law at some point. Yeah, this choice of law is separate. Yeah, it's separate from personal jurisdiction. And let's assume it's refiled in New York and the New York court, for example, or Ohio court could always transfer to Massachusetts if it finds that under some form of non-convenience doctrine. But that's a matter for another point. Yeah, I don't think that would be possible. I think the fact that the Massachusetts court lacked personal jurisdiction over the case in the first instance would preclude a written transfer for a venue. And certainly there are issues that could be litigated, but I would think that that would be a valid basis for opposing transfers. Any closing thoughts? 30 seconds. No, we just ask that the court affirm, largely for the reasons I've given, that this is a complaint where the only allegation tying the case to Massachusetts is that's the location where the plaintiff accessed the website in this court's prior decisions. Make clear that that is not enough to establish specific personal jurisdiction. Thank you. Okay, Mr. Retzel-Roberto, three minutes. And please identify yourself. James Retzel again for the appellant. So one thing I want to point out, almost all of the arguments that my friend has made here about internet contacts generally, they were all rejected by this court in Klixer. It went all the way down the line. The idea that this is a unilateral type situation, that's not true here. This is a bilateral situation. Yeah, but Klixer was a case that involved much more than internet contacts. Klixer involved the actual transaction of business. And we did allege that Bloomingdale's transacts business in this state. And it sounds like now we've shifted to talking about purposeful availment, but the district court dismissed this saying there was no claim-related contact in Massachusetts. So when we're talking about why we didn't amend the complaint, we didn't ask for discovery, we're on a conceptual battleground here about whether this happened in Massachusetts. And we allege the facts to show that it did happen in Massachusetts. This is only about what happened in Massachusetts. Appellees continue to frame the argument as one of simply accessing the website, whereas you are strenuously saying it's way more than that. Exactly. It's accessing and targeting. And so my assumption is that you would say that they're accessing and targeting regardless of the state. And so theoretically, any state would have personal jurisdiction. And this is a very important point. That's because they chose to configure their website that way. They can configure their website so it does not send this code to people in Massachusetts. There's a narrative emerging from my friend that this is all out of their hands. It's their website. They decide what code is on it. They can screen people by geography. And this was a big point in Clixer. They looked at, well, yeah, you have a worldwide accessible website. You're doing business in the United States. You could have chosen not to. They made a choice to send this to Massachusetts residents when they log on. That's the defendant's choice. So when they keep saying that the contact can't emerge from the plaintiff's own action, the case they're always citing for that is Walden, a Supreme Court case. That case can't be stretched to fit this situation. The Walden case involved an airport interdiction in Georgia. Police officers took some money from some travelers. They sued that police officer in Nevada. So from that case, it emerged the rule, well, it can't just be the plaintiff's own residents dragging the defendant into the form. But that's not what's happening here. We're saying the events happened in Massachusetts. The plaintiff was communicating in Massachusetts. The defendant sent an interceptive device to Massachusetts. All of that connects in Massachusetts. The plaintiff, the defendant, the claimed cause and contact, it's all here. And it's not somewhere else. It's not in Ohio. It's not in New York. It's all here. It happened here, but is that enough to say it's targeting mass? Yes, because they deliberately chose to do this nationally. And it's like in Fort Motor and Keaton, if I may finish, the Fort Motor case, the Keaton case, Supreme Court cases, all involved defendants operating nationally. And they made the same argument. They said, we didn't specifically target the forum. Well, you did in the sense that you chose to do business everywhere. By choosing to be national, you're making a decision to do the business in the forum. And that's what led to this contact in Massachusetts. That's all that our claim is about, Massachusetts. Thank you, counsel. Have a good day. You're both excused. That concludes argument in this case.